FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 17, 2025

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

DAVID M.,[1]

                    Plaintiff,

            v.

FRANK BISIGNANO,
Commissioner of Social Security,

                    Defendant.

No.  2:25-cv-159-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS**

Plaintiff David M. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 benefits. Plaintiff claims he is unable to work due to both physical and mental conditions. Because the ALJ consequentially erred when considering the medical record and

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

DISPOSITIVE ORDER - 1

evaluating Plaintiff's reported symptoms and the medical opinions, this matter is remanded for further proceedings.

## I.    Background

After serving in the military and attempting work, Plaintiff applied for benefits under Title 2 in June 2021, at the age of 36, claiming disability beginning April 1, 2020.[2] The agency denied benefits, and Plaintiff requested an administrative hearing.[3]

ALJ Allen Erickson held a telephonic hearing in February 2023, at which Plaintiff and a vocational expert testified.[4] After the hearing, the ALJ issued a decision denying benefits.[5] The ALJ found Plaintiff's alleged symptoms were "not entirely consistent with the medical

---

[2] AR 219–20.

[3] AR 119–30

[4] AR 39–82.

[5] AR 19–38. Per 20 C.F.R. § 404.1520(a)–(g), a five-step evaluation determines whether a claimant is disabled.

evidence and other evidence."[6] As to the medical opinions, the ALJ found:

- The examining physical-health opinion of Shirley Deem, MD; the examining mental-health opinion of Ngozi Chime, ARNP; the reviewing administrative physical-health findings by Paula Lantsberger, MD; and the reviewing administrative mental-health findings by Lisa Hacker, MD MPH, not persuasive.

- The reviewing physical-health administrative findings by Dennis Koukol, MD; and the reviewing mental-health administrative findings by Steven Haney, MD, generally persuasive.[7]

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through March 31, 2023.

_____

[6] AR 29. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

[7] AR 30–32.

- Step one: Plaintiff had not engaged in substantial gainful employment during the relevant period, which began on the alleged onset date of April 1, 2020.

- Step two: Plaintiff had the following medically determinable severe impairments: lumbar spine conditions, obesity, asthma, irritable bowel syndrome (IBS), major depressive disorder, anxiety disorder, and attention deficit hyperactivity disorder (ADHD).

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work with the following restrictions:

  > He can lift and/or carry twenty pounds occasionally and ten pounds frequently; he can stand and/or walk four hours out of an eight-hour workday; he can sit six hours out of an eight-hour workday. He can occasionally climb ladders, ropes, scaffolds, stairs, and ramps; he can occasionally crawl and balance; he can have occasional exposure to vibration, temperature and humidity extremes, and concentrated levels of dust, fumes, gases, and poor ventilation, etc.; he needs ready access to bathroom facilities meaning no more than 100 feet away; he will need occasional use of a cane to ambulate; he can understand, remember, and apply

detailed but not complex instructions while performing predictable tasks not in a fast-paced production type environment; and he can have exposure to only occasional workplace changes and can have only occasional interaction with the general public.

- Step four: Plaintiff has no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as garment sorter, bench assembler, and office helper.[8]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[9]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error impacted the nondisability determination.[10] Substantial evidence is "more than a

---

[8] AR 22–34.

[9] AR 6–11. ECF No. 1.

[10] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012),

mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[11] The court looks to the entire record to determine if substantial evidence supports the ALJ's findings.[12]

### III.   Analysis

Plaintiff argues the ALJ erred when evaluating Plaintiff's symptom reports and Dr. Deem's medical opinion. In response, the Commissioner argues the ALJ's decision is supported by substantial evidence and that the ALJ did not commit any harmful legal error. As is

_____

*superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[11] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[12] *Kaufmann v. Kijakazi*, 32 F4th 843, 851 (9th Cir. 2022). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (requiring the court to consider the entire record, not simply the evidence cited by the ALJ or the parties).

explained below, the ALJ's nondisability finding was impacted by consequential error.

## A.    Symptom Reports: Plaintiff establishes consequential error.

Plaintiff argues the ALJ erred by rejecting Plaintiff's statements about his symptoms and limitations without articulating specific, clear, and convincing reasons supported by substantial evidence, highlighting that the ALJ misinterpreted the medical records. The Court agrees the ALJ erred.

### 1.    Plaintiff's testimony about his symptom reports

At the hearing, Plaintiff testified about his prior work and military experience, from which he was medically discharged due to exacerbated breathing difficulties.[13] Plaintiff shared that due to his lung issues and his obesity he is often rendered short of breath.[14] Plaintiff also testified that he suffers back pain due to his degenerative

---

[13] AR 50–57.

[14] AR 58.

disc disease and obesity.[15] He had a spinal cord stimulator (SCS) implanted in his back in September 2022 to help with the pain.[16] The implant is operated by a battery, and if the battery is not charged, it does not manage his pain and he must sit down.[17] Plaintiff stated that the implant initially relieved his back pain, but his back pain and numbness in his legs returned.[18] The implant allowed Plaintiff to stop taking the previously prescribed methocarbamol, which is a muscle relaxer, but the implant has not allowed him to increase the amount of activity he can engage in.[19]

Plaintiff testified that he cannot stand while cooking or load the washer, dryer, or dishwasher.[20] He said he can clean the floor and counter surfaces, but he must take breaks, with the longest that he can

---

[15] AR 59.

[16] *Id.*

[17] AR 60.

[18] *Id.*

[19] AR 61.

[20] AR 67.

stand being an hour.[21] He uses a grabbing tool to pick up items from the floor.[22] He also shared that he can trim hedges and bushes, but he is not able to do the other landscaping work that requires bending or picking things up.[23] He testified that can walk on a treadmill for 10 minutes and walk up a hill about 100 feet to visit his mom while using a cane for stability; when he arrives, he is short of breath.[24] In addition, he said that after a flight of stairs he is winded, he needs to slow down when walking, and if he is very tired when walking he must sit down.[25] Plaintiff stated that he uses a cane every day to prevent falling both while walking and standing, because his legs give out or he loses his equilibrium.[26] Plaintiff testified that driving a vehicle is a challenge because his medication makes him drowsy, and so he limits his driving

---

[21] AR 67.

[22] *Id*.

[23] AR 68.

[24] AR 69.

[25] AR 58.

[26] AR 69–70.

DISPOSITIVE ORDER - 9

to 45 minutes.[27] Plaintiff also testified that he has a hard time concentrating due to his pain and anxiety medications.[28] Plaintiff stated he also takes an anti-diarrhea medication for his IBS, which his psychiatrist believes is induced by his anxiety.[29] Plaintiff stated he uses the bathroom about 3–5 times a day and that if he leaves the house there are times that he must use the bathroom frequently to address his anal leakage.[30] Plaintiff shared that his PTSD is associated with his military service in Korea.[31] He has received multiple rounds of transcranial magnetic stimulation to assist with his PTSD.[32] Plaintiff testified that his PTSD causes daily difficulties with focus, anxiety, and/or anger.[33]

---

[27] AR 68.

[28] AR 70.

[29] AR 57, 61–63.

[30] AR 61–63.

[31] AR 64.

[32] AR 65.

[33] AR 62–65.

1      2.    <u>Standard</u>

2          After finding a medically determinable impairment, the ALJ must

3  assess the intensity and persistence of the alleged symptoms to

4  determine how they affect the claimant's ability to work.[34] Factors the

5  ALJ may consider when evaluating the intensity, persistence, and

6  limiting effects of a claimant's symptoms include: 1) objective medical

7  evidence, 2) daily activities; 3) the location, duration, frequency, and

8  intensity of pain or other symptoms; 4) factors that precipitate and

9  aggravate the symptoms; 5) the type, dosage, effectiveness, and side

10 effects of any medication the claimant takes or has taken to alleviate

11 pain or other symptoms; 6) treatment, other than medication, the

12 claimant receives or has received for relief of pain or other symptoms;

13 and 7) any non-treatment measures the claimant uses or has used to

14 relieve pain or other symptoms.[35]

15

16 _____

17 [34] 20 C.F.R. § 404.1529(c).

18 [35] *Id.* § 404.1529(c). *See also* 3 Soc. Sec. Law & Prac. § 36:25,

19 Consideration of objective medical evidence (2025).

1    If the ALJ finds inconsistency between the claimant's reported

2    symptoms and the evidence, the ALJ must identify what symptom

3    claims are being discounted and clearly and convincingly explain the

4    rationale for discounting the symptoms with supporting citation to

5    evidence.[36] This requires the ALJ to "show his work" and provide a

6    "rationale . . . clear enough that it has the power to convince" the

7    reviewing court.[37]

8        3.    The ALJ's findings

9        The ALJ found Plaintiff's "statements concerning the intensity,

10    persistence, and limiting effects of [his] symptoms are not entirely

11    consistent with the medical evidence and other evidence in the record . .

12    . ."[38] The ALJ summarized some of the medical records pertaining to

13    Plaintiff's lumbar spine conditions and his treatment for such, including

14    _____

15    [36] *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022); 20 C.F.R. §

16    404.1529(c); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); Soc.

17    Sec. Rlg. 16-3p, 2016 WL 1119029, at *7.

18    [37] *Smartt*, 53 F.4th at 499 (alteration added).

19    [38] AR 29.

DISPOSITIVE ORDER - 12

1    that he had a spinal cord simulator (SCS) implanted in the fall of

2    November 18, 2022, stating:

3          [Plaintiff] stated that he was getting great relief from the
          device but started experiencing excruciating pain that
4          started a few days prior. He expressed concern that the
          device unplugged or something shifted. However, an
5          examination showed the implant device was in place. The
          assessment noted that the claimant had axial and discogenic
6          pain that should improve with reprograming.[39]

7    The ALJ then stated that "December 5, 2022 Department of Veterans

8    Affairs medical records note that the claimant reported he had been

9    doing well since his back surgery."[40]

10         The ALJ also discounted Plaintiff's reported shortness of breath

11   because "[p]ulmonary function testing has showed a nonspecific mild

12   restrictive pattern with normal diffusing capacity."[41] The ALJ

13   discounted Plaintiff's IBS symptoms because Plaintiff "noted his

14   symptoms are off and on and not as bad as they had been" given that

15

16   _____

17   [39] AR 29.

18   [40] AR 30.

19   [41] *Id.*

DISPOSITIVE ORDER - 13

medication improved his symptoms.[42] The ALJ also discounted Plaintiff's reported anxiety, depression, and ADHD symptoms because medical records showed improvement with medication and "[t]hroughout the mental health treatment records, the claimant's anxiety and depression are consistently noted to be doing better."[43]

4.    Analysis

Plaintiff establishes consequential error. The ALJ misreading of some of the medical records led to several consequential errors.

First, as to the SCS device, the ALJ failed to appreciate that the leads attached to the stimulator pack shifted after the operation and that Plaintiff did not enjoy sustained pain improvement.[44] The November 18, 2022 follow-up note states, "Patient has one lead that may have migrated by two contacts. Checking on flouro we see that both leads have descended; the upper lead crosses the T9 VB through

---

[42] AR 30.

[43] Id.

[44] AR 770.

the T9-10 disc; the top of the inferior is now mid-T10."[45] The physician hoped that Plaintiff's pain would improve with reprogramming of the implant.[46] There are no subsequent medical records discussing Plaintiff's back condition, as the only other subsequent treatment record is from Plaintiff's medication-management provider Dr. David Penner on December 14, 2022.[47] Yet, the ALJ stated, "December 5, 2022 Department of Veterans Affairs medical records note that the claimant reported he had been doing well since his back surgery."[48] This record, however, is not dated December 5 but instead November 15, 2022, three days *before* the appointment that Plaintiff reported "paralytic pain" and the imaging revealed that the leads connected to the stimulator pack had descended.[49] The ALJ failed to appreciate that the SCS leads were no longer in the correct location and that the medical record in which

---

[45] AR 770; *see also* AR 806.

[46] AR 773.

[47] AR 913–20.

[48] AR 30.

[49] AR 770, 806–10.

Plaintiff reported pain relief afforded by the device occurred *before* the leads descended. These misunderstandings by the ALJ impacted the ALJ's evaluation of Plaintiff's reported back pain and resulting limitations.

In addition, even if the SCS device did provide sustained pain improvement, the ALJ failed to consider Plaintiff's pain and resulting limitations before the implant.[50] For instance, before the permanent SCS device was installed, Plaintiff's treatment for his back pain included injections, physical therapy, chiropractic care, a bilateral radiofrequency ablation, and a temporary stimulator in November 2021.[51] These procedures did not offer complete, sustained pain relief. In addition, the ALJ did not address Plaintiff's reports that he falls if he is not using his cane. Like his testimony on this point, Plaintiff told his

---

[50] *See Smith v. Kijakazi*, 14 F.4th 1108, 1113 (9th Cir. 2021) (holding that the claimant's testimony "could not be discredited as a whole because of changes over time or inconsistencies relevant only to portions of testimony describing a certain period").

[51] AR 422, 431, 450–82, 752–67.

treating provider in March and May 2022 that he had fallen due to seizing pains in his lower back and hips, causing his legs to give out.[52]

Therefore, substantial evidence does not support the ALJ's finding that Plaintiff's testimony about his standing and walking limitations is not entirely consistent with the record. This error consequentially impacted the RFC, which requires Plaintiff to be able to stand and/or walk for four hours each workday, along with occasionally lifting or carrying 20 pounds and frequently lifting 10 pounds, while only using the cane *occasionally*.[53] In comparison, the vocational expert testified that Plaintiff is unable to perform light duty jobs if he must use a cane frequently.[54] On remand, the ALJ is to develop the record by obtaining medical records since November 2022 and by ordering a consultative physical examination to reassess Plaintiff's exertional abilities.

Second, substantial evidence does not support the ALJ's decision to discount Plaintiff's reported shortness of breath simply on the

---

[52] AR 821, 781.

[53] AR 28.

[54] AR 76–77.

grounds that it is disproportionate to his FEV1 (forced expiratory volume in 1 second) and FVC (forced vital capacity) readings which were above 70%. Although Plaintiff's pulmonary function testing readings were above 70%, the pulmonologist stated, "I suspect his obesity and likely deconditioning are contributing to his symptoms as well."[55] The pulmonologist did not disbelieve Plaintiff's reported shortness of breath but instead found that several symptoms contributed to his shortness of breath and even requested records from a methacholine challenge test done in 2012.[56] After reviewing the 2012 records, the physician determined that the 2012 test was consistent with asthma.[57] Plaintiff was prescribed inhalers, and he told his pulmonary treatment provider in 2022 that he was using his inhaler a few times a week and that if he paced himself he could continue with an activity even though he would have shortness of breath.[58] Thus, on this

_____

[55] AR 689.

[56] AR 689–90, 739–40.

[57] AR 739–40.

[58] AR 807–08.

1    record, substantial evidence does not support the ALJ's finding that

2    Plaintiff's reported shortness of breath was disproportionate to his

3    pulmonary test results. This error was harmful because the RFC

4    allowed Plaintiff to have occasional exposure to concentrated levels of

5    dust, fumes, gases, and poor ventilation; whereas Dr. Koukol

6    recommended that Plaintiff avoid concentrated exposure to fumes,

7    odors, dusts, gases, and poor ventilation.[59]

8         Third, the ALJ's finding that Plaintiff's depression, anxiety, and

9    ADHD symptoms were "consistently noted to be doing better" because of

10    medication is not supported by substantial evidence.[60] Instead of

11    sustained mental-health improvement, treatment records reveal waxing

12    and waning mental-health symptoms—and continued medication

13    adjustments to try and stabilize symptoms.[61] Treatment notes authored

14    _____

15    [59] AR 28, 100.

16    [60] AR 30.

17    [61] *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of

18    improvement and debilitating symptoms are a common occurrence. . .

19    .").

DISPOSITIVE ORDER - 19

by Dr. Penner, who was Plaintiff's mental-health medication-management provider, reflect:

- January 2022: reporting that he had been confused about his medications, his self-worth is down, and his anxiety is bad; observed with slow psychomotor activity and quiet, slowed speech with dysthymic affect and otherwise normal mental status.[62]

- April 2022: reporting that his anxiety is noticeable when he does not take medications and has difficulties with short-term memory loss; observed with slowing psychomotor activity and slightly slowed and quiet speech, with sad dysthymic affect and otherwise normal mental status.[63]

- May 2022: reporting depression is getting better and that while anger management had been getting better he had an anger outburst over the weekend; observed with slowed psychomotor

---

[62] AR 504–06.

[63] AR 876–77.

activity and slightly slowed and quiet speech with a dysthymic affect and otherwise normal mental status.[64]

- August 2022: reporting much anxiety and depression; observed with restless psychomotor activity and worried/anxious affect with otherwise normal mental status.[65]

- November 2022: reporting concern that medication is making him hallucinate although he feels calmer; observed with somewhat slow psychomotor activity and slightly slowed and quiet speech with dysthymic/depressed affect and otherwise normal mental status.[66]

- December 2022: reporting that although his anxiety has been lowering he is still having agitation issues with the worse being mid-day; observed with slow psychomotor activity and slightly

---

[64] AR 881–82.

[65] AR 892–93.

[66] AR 908–09.

slowed and quiet speech, decreased affect, and otherwise

normal mental status.[67]

In addition, throughout the relevant period, Plaintiff's PHQ-9 scores

continued to fluctuate between "severe" and "moderately severe."[68]

Overall, contrary to the ALJ's general finding that Plaintiff's "anxiety

and depression [and ADHD] have been noted to be improved with

treatment,"[69] the longitudinal treatment record reflects that, even with

consistent medication management, Plaintiff struggled with fluctuating

anxiety, depression, and anger-management symptoms.

Finally, as Plaintiff highlights, the ALJ did not discuss whether

Plaintiff's reported daytime drowsiness resulting from his medication is

consistent with the record.[70] On remand, the ALJ must do so.

---

[67] AR 913–16.

[68] AR 909.

[69] AR 30.

[70] *See* Soc. Sec. Rlg. 16-3p (requiring the ALJ to consider medication

side-effects when assessing the claimant's symptom reports).

DISPOSITIVE ORDER - 22

### 5.    Conclusion

The ALJ did not provide a clear rationale that convinced the Court that Plaintiff's reported symptoms are not entirely consistent with the record. The ALJ's finding in this regard is not supported by substantial evidence.

## B.    Medical Opinions: Plaintiff establishes consequential error.

Plaintiff argues the ALJ failed to properly evaluate the opinion of Shirley Deem, MD.[71] In response, the Commissioner argues the ALJ reasonably found Dr. Deem's opinion not persuasive. As is explained below, the ALJ's evaluation of Dr. Deem's opinion was consequentially impacted by the ALJ's erroneous reading of the treatment records.

### 1.    Standard

The ALJ must consider and articulate how persuasive he found each medical opinion and prior administrative medical finding,

---

[71] Plaintiff's motion focused solely on the ALJ's evaluation of Dr. Deem's physical-health opinion and not the mental-health opinions. Therefore, the Court only discusses Dr. Deem's opinion and the administrative findings related to Plaintiff's physical health.

including whether the medical opinion or finding was consistent with and supported by the record.[72] The factors for evaluating the persuasiveness of medical opinions include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[73] Supportability and consistency are the most important factors.[74] The regulations define these two required factors as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[75]

---

[72] 20 C.F.R. § 404.1520c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[73] 20 C.F.R. § 404.1520c(c)(1)–(5).

[74] *Id.* § 404.1520c(b)(2).

[75] *Id.* § 404.1520c(c)(1)–(2).

When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[76]

### 2.  Dr. Deems' opinion and the administrative medical findings

In October 2021, Dr. Deems conducted a consultative examination and reviewed a CT report showing mild lumbar degenerative changes and a chest x-ray with normal results.[77] Plaintiff told Dr. Deems that he was living with his wife and three children, could not perform housework that required bending or lifting due to his low back pain that radiates to his hips, and that he uses a cane for stability.[78] Plaintiff's chest and lungs were clear to auscultation, he had no edema, and he was obese at 330 pounds. Dr. Deems observed that he used a cane as an assistive device: "[h]e uses a cane for stabilization. He stands up rather quickly from a seated position and just moves ahead using his cane. No particular hesitancy."[79] His range of motion was normal for all tested

---

[76] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

[77] AR 625–29.

[78] AR 625.

[79] AR 627.

body parts. He had a positive straight leg raise in the seated and supine positions on both the left and the right, and he had 5/5 upper and lower extremity strength and tone.

Dr. Deems diagnosed Plaintiff with degenerative disk disease of the lumbar spine with lumbar strain, overweightness, ADHD (by history), depression (by history), and PTSD (by history). Dr. Deems opined that Plaintiff could stand or walk about 6 hours using his cane for stability, that he needed to periodically alternate between sitting and standing, that he could lift 10 pounds occasionally and frequently, and that he could occasionally and slowly climb stairs and ladders, balance, stoop, crouch, kneel, and crawl.[80]

The same month as Dr. Deem's examination, Paula Lantsberger, MD, who specializes in occupational medicine, reviewed the record and issued initial-level administrative medical findings.[81] She found that Plaintiff could sit about 6 hours and stand and/or walk for 4 hours, a medically required hand-held assistive device was necessary for

---

[80] AR 628–29.

[81] AR 84–93.

ambulation and stabilization, he was limited to occasional postural movements, and he should avoid heights due to the need to use a cane.

Four months later, in March 2022, Dennis Koukol, MD, whose specialty is cardiology, issued reconsideration-level administrative medical findings.[82] He found that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk for 4 hours, sit for 6 hours, frequently crawl, and occasionally stoop and climb ladders and ropes, and should avoid concentrated exposure to vibration and fumes and other environmental odors. Dr. Koukol wrote,

> Regarding condition of DDD [(degenerative disc disease)] of lumbar spine, he does have chronic low back pain he believes to be from military work entering in and out of tanks since 2011 with having only pain with [range of motion] to low back and pain with prolonged walking, standing or excessive lifting of heavy items. Despite chronic pain medication management, objectively imaging is just mild DDD L5-S1 with no nerve root impairment despite self-reported sensation changes into legs which is not objectively found ever. This condition he also contributes to his [right] hip and [right] knee pain, which is not found to actually limit his functioning beyond his subjective reports. He is able to do pool exercises, walk 50 feet, ascend a flight of stairs, manage

---

[82] AR 95–101.

1

2

> his self care, *uses no assistive devices*, and so RFC considers
> some restrictions to lumbar primarily due to pain.[83]

3

4

There is no explanation by Dr. Koukol as to why he found that Plaintiff

does not use a cane—an assistive device—even though there are

5

references to Plaintiff's use of a cane in medical records.

6

### 3.    The ALJ's findings

The ALJ found Dr. Deem's opinion not persuasive. As to the

7

supportability factor, the ALJ found the opinion:

8

9

10

11

> . . . is not supported by the physical examination results at
> the evaluation. It was noted that although the claimant used
> a cane, he moved ahead of it. He had normal range of motion
> of his back, neck, hip, upper extremities, and lower
> extremities. Although the claimant displayed positive
> straight leg raising, he had 5/5 muscle strength in the lower
> extremities.

12

As to the consistency factor, the ALJ found:

13

14

15

16

17

18

> Additionally, the overall records is more consistent with the
> specific limitation contained in this decision's residual
> functional capacity. December 5, 2022 Department of
> Veterans Affairs medical records note that the claimant
> reported he had been doing well since his back surgery. It
> was noted that he was walking a little more and was the
> primary caretaker for his mother. He stated that he walked
> about 100 feet with elevation to get to his mother's house
> every day. (Exhibit 12F, pg. 11). Medical records note that

19

[83] AR 101 (emphasis added).

the claimant's reported shortness of breath seems disproportionate to his pulmonary disease in that his FVC and FEV1 are above 70%. Pulmonary function testing has showed a nonspecific mild restrictive pattern with normal diffusing capacity. (Exhibit 9F, pg. 42). As for his irritable bowel syndrome impairment, the claimant has noted his symptoms are off and on and not as bad as they had been. He has taken Loperamide, which has improved his symptoms. (Exhibit 12F, pg. 16).[84]

The ALJ found Dr. Lantsberger's administrative findings unpersuasive and found Dr. Koukol's administrative findings generally persuasive.[85] For the consistency analysis, the ALJ used the exact language he used when analyzing Dr. Deem's opinion, as quoted above, as he did when analyzing the consistency of Dr. Lantsberger's and Dr. Koukol's administrative findings with the record, including citing the incorrect date for the cited Veterans Affairs medical record, relying on the pulmonary function testing, and the improvement with medication for IBS.[86] For the supportability factor, the ALJ simply acknowledged that both Dr. Lantsberger and Dr. Koukol were

---

[84] AR 30–31.

[85] AR 31.

[86] *Id.*

1    knowledgeable in the Social Security Administration disability

2    program.[87]

3        4.    <u>Analysis</u>

4        As to Dr. Deem's opinion, the ALJ's findings as to the

5    supportability and the consistency factors are not supported by

6    substantial evidence. The ALJ's supportability analysis was

7    consequentially impacted by the ALJ's misreading of Dr. Deem's

8    observation about Plaintiff's use of his cane. The ALJ found Dr. Deem's

9    opinion not supported because "[i]t was noted that although the

10    claimant used a cane, he moved ahead of it."[88] This is an incorrect

11    interpretation of Dr. Deem's observation, which was that Plaintiff "uses

12    a cane for stabilization. He stands up rather quickly from a seated

13    position and just moves ahead *using* his cane."[89] Consistent with this

14    observation, Dr. Deem opined that Plaintiff needed to use a cane as an

15

16    _____

17    [87] AR 31.

18    [88] AR 30.

19    [89] AR 627 (emphasis added).

assistive device.[90] The ALJ also found Dr. Deem's opinion not supported because he had 5/5 muscle strength in the lower extremities; however, the ALJ fails to convincingly explain why Plaintiff's full muscle strength in his lower extremities diminishes his need to use the cane for stabilization, as Dr. Deem—and Dr. Lantsberger—found.[91] Moreover, the ALJ failed to explain why Plaintiff's full lower extremity strength was more relevant evidence to the supportability analysis rather than Plaintiff's lumbar imaging, obesity, and positive straight leg raise in both positions. The imaging reviewed by the ALJ showed at L5-S1 intervertebral disc height loss, vacuum disc phenomenon, mild endplate sclerosis, and mild symmetric disc bulge seen; similarly, imaging a month prior revealed mild degenerative changes at L5-S1 with facet arthropathy and intervertebral disc height loss.[92]

---

[90] AR 627.

[91] AR 89 ("A medically required hand-held assistive device is necessary for ambulation").

[92] AR 322, 376–77.

As to the consistency factor, the ALJ's analysis was consequentially impacted by the ALJ's misunderstanding as to the date of the cited "December 5, 2022 Department of Veterans Affairs medical records note that the claimant reported he had been doing well since his back surgery."[93] Again, this medical record was from November 14, 2022, three days *before* the appointment he reported excruciating back pain starting a few days prior.[94] Upon testing, it was discovered that both leads from the spinal code stimulator implant had moved.[95] The provider hoped that reprogramming the implant would provide pain relief; however, this was the last medical record related to Plaintiff's back pain or the implant in the file and thus it is unknown where Plaintiff reported and/or was observed with increased or decreased back pain or limitations.

Moreover, the ALJ fails to explain why any relief afforded by the permanent implant is a basis to find Dr. Deem's opinion, which was

---

[93] AR 30.

[94] AR 770–73, 806–10; *see also* AR 806, 848.

[95] AR 770, 806, 846.

issued before the implant was installed, as unsupported. Like Dr. Deem and others observed, Plaintiff used a cane to help with balance and ambulation.[96] Similarly, Dr. Lantsberger found that Plaintiff needed to use a cane for ambulation.[97]

By finding Dr. Deem's opinion unpersuasive, the ALJ did not include in the RFC Dr. Deem's opinions that Plaintiff was limited to lifting 10 pounds occasionally, must alternate between sitting and standing, would perform occasional postural activities very slowly, and could only occasionally crouch, stoop, or kneel.[98] The RFC also only states that Plaintiff needs occasional use of a cane. Including each of Dr. Deem's limitations would further reduce the available jobs.

---

[96] AR 640 (Nov. 20, 2011: psychiatric disability evaluation); AR 820 (March 7, 2022: follow-up visit); AR 781 (May 31, 2022 appointment).

[97] AR 89.

[98] *Compare* AR 28 *with* AR 88–90. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (requiring the ALJ to translate and incorporate clinical findings into the succinct RFC).

DISPOSITIVE ORDER - 33

1

### 5.  Conclusion

2    The ALJ's finding that Dr. Deem's opinion is unpersuasive is not

3    supported by substantial evidence. Both the ALJ's supportability and

4    consistency evaluations are based on a flawed reading of the medical

5    records. Likewise, the ALJ's consistency analysis relating to the

6    administrative findings by Dr. Lantsberger and Dr. Koukol are flawed

7    for the same reasons. On remand, the ALJ is to reevaluate all the

8    medical opinions and administrative findings.

9

### IV.  Conclusion

10    Plaintiff establishes the ALJ erred. Remand is necessary to allow

11    the ALJ is to develop the record, including ordering a consultative

12    physical examination,[99] and reevaluate—with meaningful articulation

13    and evidentiary support—the sequential process. When conducting this

14    evaluation, the ALJ is to consider whether Plaintiff has experienced

15    sustained improvement in back pain and other symptoms because of

16    _____

17    [99] The Social Security Administration is to provide "the examiner [with]

18    any necessary background information about your condition." *See* 20

19    C.F.R. § 404.1517.

treatment, and if so consider Plaintiff's RFC for that period of sustained improvement apart from his prior RFC.[100]

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 9 and 13**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 17th day of December 2025.

_Edward F. Shea_
_____
EDWARD F. SHEA
Senior United States District Judge

---

[100] *See Smith v. Kijakazi*, 14 F.4th 1108, 1113–16 (9th Cir. 2021).